**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **MALIKIE INNOVATIONS LTD. AND KEY PATENT INNOVATIONS LTD.,**<br><br>Plaintiffs,<br><br>v.<br><br>**TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., AND TOYOTA MOTOR SALES USA, INC.,**<br><br>Defendants. | Case No. 2:26-cv-00469<br><br>Jury Trial Demanded |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Malikie Innovations Ltd. ("Malikie") and Key Patent Innovations Ltd. ("KPI") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Original Complaint for patent infringement against Defendants Toyota Motor Corporation, Toyota Motor North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota" or "Defendants"), alleging as follows:

**BACKGROUND AND NATURE OF THE SUIT**

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  This case asserts infringement of United States Patent Nos. 8,463,424 ("the '424 Patent"), 8,503,936 ("the '936 Patent"), 9,417,077 ("the '077 Patent), 10,484,870 ("the '870 Patent"), RE48,212 ("the '212 Patent"), 7,917,829 ("the '829 Patent"), and 8,291,289 ("the '289 Patent") (collectively, "the Patents-in-Suit").

**THE PARTIES**

2.      Plaintiff Malikie is the successor-in-interest to a substantial patent portfolio created and procured over many years by BlackBerry Ltd., formerly known as Research in Motion Ltd., and its predecessor, subsidiary, and affiliated companies (collectively, "BlackBerry").  Malikie is an Irish entity duly organized and existing under the laws of Ireland. Malikie has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3.      Plaintiff KPI is the beneficiary of a trust pursuant to which Malikie owns, holds, and asserts the Patents-in-Suit.  KPI is an Irish entity duly organized and existing under the laws of Ireland.  KPI has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

4.      Defendant Toyota Motor Corporation ("TMC") is a corporation organized and existing under the laws of Japan with a principal place of business at 1 Toyota-cho, Toyota City, Aichi Prefecture 471-8571, Japan. On information and belief, TMC does business itself, and through its subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas.

5.      Defendant Toyota Motor North America, Inc. ("TMNA") is a corporation organized and existing under the laws of California, with its principal place of business in this District at 6565 Headquarters Drive, Plano, Texas 75024.  On information and belief, TMNA is a wholly owned subsidiary of TMC.  TMNA may be served with process through its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  On information and belief, TMNA is responsible for research and development, manufacturing, sales, offers for sale, marketing, importation, and distribution of automotive vehicles from Toyota-managed brands (e.g., Toyota and Lexus) in the United States, including this District.

6.    Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is corporation organized and existing under the laws of California, with its principal place of business in this District at 6565 Headquarters Dr., Plano, Texas 75024.  On information and belief, TMS is a wholly owned subsidiary of TMC.  TMS may be served through its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  On information and belief, TMS is responsible for sales, marketing, and distribution of automotive vehicles from Toyota-managed brands (e.g., Toyota and Lexus) in the United States, including this District.

## JURISDICTION AND VENUE

7.    This action arises under the patent laws of the United States, 35 U.S.C. § 101, et seq. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, et seq., 28 U.S.C. § 1331 (federal question jurisdiction), and § 1338 (jurisdiction over patent actions).

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.    For each Defendant, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

10.    Venue is proper as to TMC in this District pursuant to 28 U.S.C. § 1391 because, among other things, TMC is not resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).  *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

11.    TMNA has a regular and established place of business in this District, including at least at 6565 Headquarters Dr., Plano, Texas 75024.  TMS has a regular and established place of business in this District, including at least at 6565 Headquarters Dr., Plano, Texas 75024.

ORIGINAL COMPLAINT                                                                                      Page 3 of 31

Additionally, Defendants have committed and continue to commit acts of infringement in this District through the marketing, distribution, use, sale, service, support, financing, and/or repair/maintenance of Toyota and Lexus vehicles in this District.

12.     As discussed in detail herein, Defendants have infringed (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, selling, offering for sale, and/or importing into the United States Toyota and Lexus vehicles and mobile applications with the features described in the charts attached hereto as Exhibits 8-16 (collectively the "Accused Instrumentalities").

13.     On information and belief, TMC controls (and has controlled) TMNA and TMS, as well as many other subsidiaries, within the supply chain of Accused Instrumentalities that were shipped to the United States.  On information and belief, TNMA and TMS provide (and have provided) sales, distribution, research, and development support in the United States for their parent TMC, which wholly owns TNMA and TMS.  At the direction and control of TMC, U.S. based sales and/or distribution subsidiaries, including TMNA and TMS, have imported and continue to import Accused Instrumentalities into the United States and this District.

14.     On information and belief TMC controls (and has controlled) TMNA and TMS. On information and belief, each of these related companies and other Toyota companies are, and have been, agents of TMC.  For example, TMC, TMNA, and TMS use the same logo, further emphasizing that these companies are alter egos and/or agents of one another.

15.     On information and belief, TMC, TMNA, and TMS, along with their respective foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries),

have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length to provide (and have provided) a distribution channel of the Accused Instrumentalities within this District and the U.S. nationally.

16.    TMC, TMNA, and TMS operate (and have operated) in agency with their respective foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, to provide a distribution channel of the Accused Instrumentalities within this District and the U.S. nationally.  TMC, TMNA, and TMS, individually and/or between one another and their respective agents and foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, purposefully direct (and have directed) the Accused Instrumentalities into established distribution channels within this District and the U.S. nationally.

17.    On information and belief, TMC, TMNA, and TMS, including their respective U.S.-based subsidiaries, affiliates, distributors, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length.  TMC, TMNA, and TMS, and their U.S.-based sales subsidiaries, individually and/or in concert, conduct business (and have conducted business) in the United States, including importing, distributing, offering to sell, and selling the Accused Instrumentalities that incorporate devices, systems, and processes that infringed the Patents-in-Suit in Texas and this District.

18.    Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' Accused Instrumentalities by and/or to affiliates, distributors, subsidiaries, suppliers, retail partners, customers, agents, and/or other Defendants, Defendants are

operating in (and have operated in) and maintaining (and have maintained) a significant business presence in the U.S. and/or through their U.S. subsidiaries or agents, Defendants do business in the U.S., the state of Texas, and in the Eastern District of Texas.

19.    On information and belief, Defendants place, have placed, and contribute to placing Accused Instrumentalities into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States, including in this judicial district.  On information and belief, Defendants have also derived substantial revenues from infringing acts in this District, including from the sale and use of the Accused Instrumentalities.

20.    On information and belief, TMC is liable for any act for which TMNA, TMS, and its other subsidiaries would be or would have been liable, including for any infringement alleged in this matter, and references herein should be understood to encompass such acts by TMC.

21.    In the alternative, the Court has personal jurisdiction over TMC under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, TMC is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over TMC is consistent with the U.S. Constitution.

22.    TMC is subject to service of process upon the Texas Secretary of State under Texas Civil Practice and Remedy Code § 17.044(b).  The Texas Secretary of State is an agent for service of process on TMC because TMC is a nonresident who engages in business in this State, but does not maintain a regular place of business in this State or a designated agent for service of process, and because this action arises out of the business TMC does and has done in this State and to which TMC is a party.  This action arises out of business TMC does and has done in this State because

TMC has infringed and continues to infringe the Patents-in-Suit in this State, which constitutes "commit[ing] a tort a whole or in part in this state."  Tex. Civ. Prac. & Rem. Code § 17.042(2).

23.     Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) Defendants have done and continue to do business in Texas and (ii) Defendants have, directly and through intermediaries, committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling Accused Instrumentalities in Texas, and/or importing Accused Instrumentalities into Texas, either directly or vicariously, inducing others to commit acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein.  Defendants have placed, and continue to place, infringing products into the stream of commerce, via established distribution channels, with the knowledge and/or understanding that such products are sold in Texas, including in this District.  Defendants have derived substantial revenues from their infringing acts occurring within Texas and within this District.  Defendants have substantial business in this State and judicial district, including: (a) at least part of their infringing activities alleged herein; and (b) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

24.     Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to Plaintiffs.

25.     In addition, Defendants have knowingly induced infringement within this District by advertising, marketing, offering for sale, selling, testing, demonstrating, and/or otherwise encouraging use of infringing products within this District to consumers and providing instructions, user manuals, demonstrations, test drives, advertising, and/or marketing materials which facilitate, direct, or encourage the use of infringing functionality with knowledge thereof.

26.     Personal jurisdiction also exists specifically over Defendants because they transact business in this State or purposefully directed at this State (including, without limitation, retail stores) by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

**THE PATENTS-IN-SUIT**

**The '424 Patent**

27.     The '424 Patent, entitled "System and method for displaying address information on a map," duly and legally issued on June 11, 2013, from U.S. Patent Application No. 11/936,455, filed on November 7, 2007, naming Ronald Dicke as the inventor.  A copy of the '424 Patent is attached hereto as Exhibit 1.

28.     The '424 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

29.     Malikie is the assignee of and owns all rights, title, and interest to the '424 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '424 Patent for the benefit of KPI.

30.     Plaintiffs have standing to sue for infringement of the '424 Patent.

**The '936 Patent**

31.     The '936 Patent, entitled "System and method for navigating between user interface elements across paired devices," duly and legally issued on August 6, 2013, from U.S. Patent

ORIGINAL COMPLAINT                                                                                    Page 8 of 31

Application No. 13/619,670, filed on September 14, 2012, naming Chris Kermoian and Joseph Goguen as the inventors.  A copy of the '936 Patent is attached hereto as Exhibit 2.

32.    The '936 Patent claims priority to U.S. Patent Application No. 13/397,533, which was filed on February 15, 2012 and issued as U.S. Patent No. 8,634,807.  The '936 Patent also claims priority to U.S. Provisional Application Nos. 61/548,145, filed on October 17, 2011; 61/555,836, filed on November 4, 2001; and 61/555,984, filed on November 4, 2011.

33.    The '936 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

34.    Malikie is the assignee of and owns all rights, title, and interest to the '936 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '936 Patent for the benefit of KPI.

35.    Plaintiffs have standing to sue for infringement of the '936 Patent.

**The '077 Patent**

36.    The '077 Patent, entitled "System and method for displaying address information on a map," duly and legally issued on August 16, 2016, from U.S. Patent Application No. 14/746,220, filed on June 22, 2015, naming Ronald Dicke as the inventor.  A copy of the '077 Patent is attached hereto as Exhibit 3.

37.    The '077 Patent claims priority to U.S. Patent Application No. 14/220,217, which was filed on March 20, 2014 and issued as U.S. Patent No. 9,074,900.  The '077 patent also claims priority to U.S. Patent Application No. 13/912,257, which was filed on June 7, 2013 and issued as U.S. Patent No. 8,682,579.  The '077 Patent also claims priority to U.S. Patent Application No. 11/936,455, which was filed on November 7, 2007 and issued as the '424 Patent.

38.    The '077 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

39. Malikie is the assignee of and owns all rights, title, and interest to the '077 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '077 Patent for the benefit of KPI.

40. Plaintiffs have standing to sue for infringement of the '077 Patent.

**The '870 Patent**

41. The '870 Patent, entitled "System and Method for Handling Peripheral Connections to Mobile Devices," duly and legally issued on November 19, 2019, from U.S. Patent Application No. 15/336,437, filed on October 27, 2016, naming Michael Brown, Michael Kirkup, Neil Adams, Herbert Little, and Christopher Pattenden as the inventors. A copy of the '870 Patent is attached hereto as Exhibit 4.

42. The '870 Patent claims priority to U.S. Patent Application No. 13/895,073, which was filed on May 15, 2013 and issued as U.S. Patent No. 9,507,950. The '870 Patent also claims priority to U.S. Patent Application No. 12/576,737, which was filed on October 9, 2009 and issued as U.S. Patent No. 8,447,696. The '870 Patent claims priority to U.S. Patent Application No. 11/067,239, which was filed on February 25, 2005 and issued as U.S. Patent No. 7,664,707. The '870 Patent also claims priority to U.S. Provisional Application No. 60/566,774, filed on April 30, 2004.

43. The '870 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

44. Malikie is the assignee of and owns all rights, title, and interest to the '870 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '870 Patent for the benefit of KPI.

45. Plaintiffs have standing to sue for infringement of the '870 Patent.

**The '212 Patent**

46. The '212 Patent, entitled "Structured Low-Density Parity-Check (LDPC) Code," duly and legally issued on September 15, 2020, from U.S. Patent Application No. 15/838,188, filed on December 11, 2017, naming Michael Livshitz, Aleksandar Purkovic, Nina Burns, Sergey Sukhobok, and Muhammad Chaudhry as the inventors. A copy of the '212 Patent is attached hereto as Exhibit 5.

47. The '212 Patent is a reissue of U.S. Patent No. 8,301,975, which issued on October 30, 2012 from U.S. Patent Application No. 13/156,942, filed on June 9, 2011. The '212 Patent claims priority to U.S. Patent Application No. 14/527,483, which was filed on October 29, 2014 and issued as U.S. Patent No. RE46,692, which was a reissue of U.S. Patent No. 8,301,975. The '212 Patent also claims priority to U.S. Patent Application No. 11/665,171, which was filed on October 12, 2005 and on July 29, 2008 as PCT Application No. PCT/CA2005/001563 and which issued as U.S. Patent No. 7,996,746. The '212 Patent also claims priority to U.S. Provisional Application Nos. 60/763,323, filed on April 20, 2005; 60/656,587, filed on February 25, 2005; 60/647,259, filed on January 26, 2005; 60/639,420, filed on December 27, 2004; 60/638,832, filed on December 22, 2004; 60/635,525, filed on December 13, 2004; 60/627,348, filed on November 12, 2004; and 60/617,902, filed on October 12, 2004.

48. The '212 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

49. Malikie is the assignee of and owns all rights, title, and interest to the '212 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '212 Patent for the benefit of KPI.

50. Plaintiffs have standing to sue for infringement of the '212 Patent.

**The '829 Patent**

ORIGINAL COMPLAINT

51.     The '829 Patent, entitled "Low Density Parity Check (LDPC) Code," duly and legally issued on March 29, 2011, from U.S. Patent Application No. 12/796,453, filed on June 8, 2010, naming Michael Livshitz as the inventor.  A copy of the '829 Patent is attached hereto as Exhibit 6.

52.     The '829 Patent claims priority to U.S. Patent Application No. 11/393,622, which was filed on March 30, 2006 and issued as U.S. Patent No. 7,752,521.  The '829 Patent also claims priority to PCT Application No. PCT/CA2005/001563, filed on October 12, 2005.  The '829 Patent also claims priority to U.S. Provisional Application Nos. 60/635,525, filed on December 13, 2004; 60/617,902, filed on October 12, 2004; 60/627,348, filed on November 12, 2004; 60/638,832, filed on December 22, 2004; 60/639,420, filed on December 27, 2004; 60/647,259, filed on January 26, 2005; 60/656,587, filed on February 25, 2005; 60/673,323, filed on April 20, 2005; and 60/727,932, filed on October 18, 2005.

53.     The '829 Patent claims patent-eligible subject matter under 35 U.S.C. §101.

54.     Malikie is the assignee of and owns all rights, title, and interest to the '829 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '829 Patent for the benefit of KPI.

55.     Plaintiffs have standing to sue for infringement of the '829 Patent.

**The '289 Patent**

56.     The '289 Patent, entitled "Low Density Parity Check (LDPC) Code," duly and legally issued on October 16, 2012, from U.S. Patent Application No. 13/346,155, filed on January 9, 2012, naming Michael Livshitz as the inventor.  A copy of the '289 Patent is attached hereto as Exhibit 7.

57.     The '289 Patent claims priority to U.S. Patent Application No. 12/987,729, which was filed on January 10, 2011 and issued as U.S. Patent No. 8,099,646.  The '289 Patent also claims priority to U.S. Patent Application No. 12/796,453, which was filed on June 8, 2010 and issued as the '829 Patent.  The '289 Patent also claims priority to U.S. Patent Application No. 11/393,622, which was filed on March 30, 2006 and issued as U.S. Patent No. 7,752,521.  The '289 Patent also claims priority to PCT Application No. PCT/CA2005/001563, filed on October 12, 2005.  The '289 Patent also claims priority to U.S. Provisional Application Nos. 60/617,902, filed on October 12, 2004; 60/627,348, filed on November 12, 2004; 60/635,525, filed on December 13, 2004; 60/638,832, filed on December 22, 2004; 60/639,420, filed on December 27, 2004; 60/647,259, filed on January 26, 2005; 60/656,587, filed on February 25, 2005; 60/673,323, filed on April 20, 2005; and 60/727,932, filed on October 18, 2005.

58.     The '289 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

59.     Malikie is the assignee of and owns all rights, title, and interest to the '289 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the '289 Patent for the benefit of KPI.

60.     Plaintiffs have standing to sue for infringement of the '289 Patent.

## GENERAL ALLEGATIONS

61.     Defendants did not have Plaintiffs' permission to make, use, sell, offer to sell, or import products or practice methods that are covered by one or more claims of any of the Patents-in-Suit.

62.     Defendants have made, used, sold, offered to sell, and/or imported into the United States products that infringe (directly and/or indirectly) one or more claims in each of the Patents-in-Suit.

ORIGINAL COMPLAINT                                                                  Page 13 of 31

63.    Defendants have infringed (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, importing, testing, demonstrating, marketing, promoting, repairing, offering and conducting test drives of, selling, and/or offering for sale in the United States the Accused Instrumentalities.

64.    Defendants' customers have directly infringed the Patents-in-Suit by using the Accused Instrumentalities.

65.    TMC is in the business of selling the Accused Instrumentalities and encouraging and helping its dealers and customers to use the Accused Instrumentalities, including in an infringing manner.  Through at least its product manuals, websites, and/or sales and marketing activities, TMC has and continues to (where applicable) solicit, instruct, encourage, and aid and abet its customers to purchase and use the Accused Instrumentalities in an infringing way.  *See, e.g.*,        https://www.toyota.com/;        https://www.toyota.com/connected-services/; https://www.toyota.com/owners/warranty-owners-manuals/.

66.    TMNA and TMS are in the business of selling, including assisting with financing the sales of, the Accused Instrumentalities and encouraging and helping their dealers and customers to purchase and subsequently use the Accused Instrumentalities, including in an infringing manner.  Through their websites, sales and marketing activities, and/or financing practices, including their terms, contracts, and agreements, TNMA and TMS have and continue to (where applicable) solicit, instruct, encourage, and aid and abet their dealers and customers to purchase and use the Accused Instrumentalities in an infringing way.  *See, e.g.*, https://www.toyota.com/usa; https://www.toyota.com/search-inventory/.

67.     Defendants have had, or should have had, knowledge of the Patents-in-Suit at least through Plaintiffs' sending of (and TMC's receipt of) notice letters dated January 8, 2024, April 5, 2024, September 13, 2024, October 25, 2024, January 10, 2025, and April 4, 2025, as well as presentations on May 22, 2025 and March 5, 2026, which identified the '424 Patent, the '077 Patent, the '870 Patent, the '212 Patent, the '829 Patent, the '289 Patent, and additional patents, and the Accused Instrumentalities as infringing the Patents-in-Suit.  In addition, or in the alternative, Defendants have had knowledge of the Patents-in-Suit through the service of this Complaint.

68.     By receiving such notice of infringement, Defendants obtained a subjective belief that there is a high probability that the Accused Instrumentalities infringe the Patents-in-Suit. Despite being put on notice of infringement, on information and belief Defendants have not taken any actions to avoid the conduct alleged to infringe and have not sought to remedy their infringements by offering to take a license.  Defendants' failure to act reflects deliberate actions to avoid learning that the Accused Instrumentalities infringe the Patents-in-Suit and, more generally, a policy of not earnestly reviewing and respecting the intellectual property of others.

69.     Defendants' actions after learning of the Patents-in-Suit were with specific intent to cause infringement of one or more claims of each of the Patents-in-Suit.

70.     Further discovery may reveal earlier knowledge of one or more of the Patents-in-Suit, which would provide additional evidence of Defendants' specific intent, willful blindness, and/or willful infringement of the Patents-in-Suit.

71.     Despite having knowledge of the Patents-in-Suit, as well as knowledge that they were directly and/or indirectly infringing one or more claims of each Patent-in-Suit, Defendants nevertheless proceeded to infringe the Patents-in-Suit, and induce others to do the same, with full

and complete knowledge of the applicability of the Patents-in-Suit to the Accused Instrumentalities, without a license and without a good faith belief that the claims of the Patents-in-Suit were not infringed.  As noted above, this includes, but is not limited to, the willful blindness of Defendants including their refusal to investigate whether the Accused Instrumentalities infringe the Patents-in-Suit.

72.    Plaintiffs have been damaged as a result of Defendants' infringing conduct. Defendants are therefore liable to Plaintiffs in an amount that adequately compensates Plaintiffs for Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

73.    In addition, for the reasons discussed herein, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

74.    Defendants failed to obtain permission from Plaintiffs to make, use, sell, offer to sell, or import products incorporating the inventions claimed in the Patents-in-Suit including, but not limited to, the Accused Instrumentalities.

75.    Malikie sent TMC a letter (addressed to TMC's Group V.P. of Business Development, CEO of Toyota Connected NA, and Deputy GC, Mr. Christopher Yang), dated January 8, 2024, offering a license to Malikie's patent portfolio, identifying several of Malikie's patents, and identifying exemplary products or services that Malikie believes infringe those patents.

76.    Malikie sent TMC a further letter (addressed to Mr. Takahashi Fujimoto of TMC's Intellectual Property Division), dated April 5, 2024, offering a license to Malikie's patent portfolio,

identifying several of Malikie's patents, and identifying exemplary products or services that Malikie believes infringe those patents.

77.    Malikie sent TMC a further letter (again addressed to Mr. Takahashi Fujimoto), dated September 13, 2024, offering a license to Malikie's patent portfolio, identifying several of Malikie's patents, and identifying exemplary products or services that Malikie believes infringe those patents.

78.    Malikie sent TMC further letters dated October 25, 2024, January 10, 2025, and April 4, 2025, made presentations to TMC on May 22, 2025 and March 5, 2026, and had meetings with TMC in at least May, July, September, and December 2025 as well as in at least January, February, March, and May 2026, as well as engaged in lengthy correspondence with TMC between these various meetings.  In addition, at Toyota's direction, Malikie has engaged in extensive licensing discussions with many of TMC's suppliers.  Despite Malikie's repeated efforts to conduct good-faith licensing discussions with both TMC and its suppliers over the past two years, including the many notice letters, presentations, meetings, and correspondence, none of the Defendants have negotiated in good faith and instead continue to make use of Malikie's patented technology without authorization.

## IEEE 802.11 STANDARDS AND PLAINTIFFS' FRAND OBLIGATIONS

79.    The Institute of Electrical and Electronics Engineers ("IEEE") is a professional association that, among other activities, develops and publishes technical standards across a wide range of fields, including telecommunications and wireless communications.

80.    The IEEE-Standards Association ("IEEE-SA") is the standards development organization within the IEEE responsible for developing and maintaining consensus-based standards in various industries, including the IEEE 802.11 family of wireless networking standards (commonly known as "Wi-Fi").  The IEEE 802.11 standards define specifications for the medium

ORIGINAL COMPLAINT                                                                                      Page 17 of 31

access control ("MAC") and physical ("PHY") layers to enable interoperable wireless local area network implementations. The IEEE-SA requires participants in its standards development process to comply with its patent policy, which governs the disclosure and licensing of patent rights that may be essential to the implementation of an IEEE standard. Participants are required to disclose the existence of patents or pending patent applications that they believe may contain claims essential or potentially essential to a proposed or approved standard. When such disclosure is made, the patent holder is requested to submit a Letter of Assurance ("LOA") stating whether it is willing to grant licenses to implementers of the relevant standard under terms that are fair, reasonable, and non-discriminatory ("FRAND"), consistent with the IEEE-SA patent policy.

81. BlackBerry participated actively in the IEEE standards development process, including the development of numerous standards within the 802.11 family. On multiple occasions, BlackBerry submitted public LOAs to the IEEE-SA stating that it may own patents containing Essential Patent Claims with respect to certain IEEE 802.11 standards, including the IEEE 802.11-2012, 802.11k, 802.11mb, 802.11n, 802.11p, 802.11r, 802.11s, 802.11u, 802.11v, 802.11w, 802.11y, 802.11z, 802.11aa, 802.11ad, and 802.11ae standards. In those LOAs, BlackBerry further indicated that it was willing to grant licenses under any patents containing Essential Patent Claims on terms that are FRAND.

82. The IEEE Patent Policy makes clear that FRAND negotiations require a reciprocal duty of the SEP holder (Submitter) and licensee (Applicant) to engage in good faith negotiations without unreasonable delay, or alternatively, litigate. Section 6.2 of the current IEEE SA Standards Board Bylaws states:

> The Submitter and the Applicant should engage in good faith negotiations (if sought by either party) without unreasonable delay or may litigate . . . over patent validity, enforceability, essentiality, or infringement; Reasonable Rates or other licensing

ORIGINAL COMPLAINT                                                        Page 18 of 31

terms and conditions; compensation for unpaid past royalties or a future royalty rate

. . . .

83.    As mentioned above, Malikie offered TMC the chance to license its SEPs, including those covering IEEE 802.11 standards, on Fair, Reasonable, and Non-Discriminatory ("FRAND") terms.  Malikie has notified TMC of infringement of its SEPs since at least 2024. Particularly, Malikie notified TMC of its infringement of the '829 Patent, the '289 Patent, and the '212 Patent on April 5, 2024.  On or about September 13, 2024, Malikie offered a specific FRAND royalty rate for all patents essential to the IEEE 802.11 standards.  As detailed above, Malikie has shared evidence of Defendants' infringement of Malikie's SEPs and made repeated efforts to engage in licensing discussions with TMC from January 8, 2024 through June 2026.  More than eighteen months have passed since Malikie's first FRAND offer.  Yet Defendants have not accepted Malikie's proposed rate or even counter-offered with a rate that they believe is FRAND.

84.    Despite Malikie's numerous attempts to discuss licensing terms with Defendants, none of the Defendants have consented to a license.  And despite having been offered a FRAND rate at which to license Malikie's SEPs, Defendants have effectively refused Malikie's rate and have never provided an alternate rate that they believe is FRAND.  Malikie has therefore been left with no choice but to bring this action to enforce its rights as the owner of valid and valuable patents that Defendants are willfully infringing.  In addition, Malikie commits to grant licenses on FRAND terms under any patents acquired from BlackBerry that contain Essential Patent Claims relating to any IEEE 802.11 standards, including those with respect to which BlackBerry did not submit an LOA.

85.    For each count of infringement listed below, Plaintiffs incorporate and re-state the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

ORIGINAL COMPLAINT                                                                        Page 19 of 31

## COUNT I – INFRINGEMENT OF THE '424 PATENT

86.    Plaintiffs incorporate herein the allegations made in paragraphs 1 through 85.

87.    Defendants have directly and/or indirectly infringed, and continue to infringe directly and/or indirectly, one or more claims of the '424 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

88.    An exemplary claim chart demonstrating Defendants' infringement of the '424 Patent, as well as Defendants' customers' infringement of the '424 Patent, which has been induced by Defendants, is attached as Exhibit 8 and incorporated herein by reference.

89.    Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '424 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 1 of the '424 Patent.

90.    On information and belief, despite Defendants' knowledge of the '424 Patent and of their infringement of the '424 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '424 Patent.

91.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '424 Patent.  For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the '424 Patent.

92.     As a result of Defendants' infringement of the '424 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

93.     In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF THE '936 PATENT

94.     Plaintiffs incorporate herein the allegations made in paragraphs 1 through 93.

95.     Defendants have directly and/or indirectly infringed, and continue to infringe directly and/or indirectly, one or more claims of the '936 Patent, including, for example, claim 7, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

96.     An exemplary claim chart demonstrating Defendants' infringement of the '936 Patent, as well as Defendants' customers' infringement of the '936 Patent, which has been induced by Defendants, is attached as Exhibit 9 and incorporated herein by reference.

97.     Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '936 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 7 of the '936 Patent.

98.     On information and belief, despite Defendants' knowledge of the '936 Patent and of their infringement of the '936 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '936 Patent.

99. On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 7 of the '936 Patent. For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 7 of the '936 Patent.

100. As a result of Defendants' infringement of the '936 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

101. In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III – INFRINGEMENT OF THE '077 PATENT

102. Plaintiffs incorporate herein the allegations made in paragraphs 1 through 101.

103. Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '077 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

104. An exemplary claim chart demonstrating Defendants' infringement of the '077 Patent, as well as Defendants' customers' infringement of the '077 Patent, which has been induced by Defendants, are attached as Exhibits 10 and 11 and incorporated herein by reference.

105.    Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '077 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 1 of the '077 Patent.

106.    On information and belief, despite Defendants' knowledge of the '077 Patent and of their infringement of the '077 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '077 Patent.

107.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '077 Patent.  For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the '077 Patent.

108.    As a result of Defendants' infringement of the '077 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

109.    In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT IV – INFRINGEMENT OF THE '870 PATENT

110.    Plaintiffs incorporate herein the allegations made in paragraphs 1 through 109.

ORIGINAL COMPLAINT                                                                 Page 23 of 31

111.    Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '870 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

112.    Exemplary claim charts demonstrating Defendants' infringement of the '870 Patent, as well as Defendants' customers' infringement of the '870 Patent, which has been induced by Defendants, are attached as Exhibits 12 and 13 and incorporated herein by reference.

113.    Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '870 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 1 of the '870 Patent.

114.    On information and belief, despite Defendants' knowledge of the '870 Patent and of their infringement of the '870 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '870 Patent.

115.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '870 Patent.  For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the '870 Patent.

116.    As a result of Defendants' infringement of the '870 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

117. In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT V – INFRINGEMENT OF THE '212 PATENT

118. Plaintiffs incorporate herein the allegations made in paragraphs 1 through 117.

119. Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '212 Patent, including, for example, claim 13, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

120. An exemplary claim chart demonstrating Defendants' infringement of the '212 Patent, as well as Defendants' customers' infringement of the '212 Patent, which has been induced by Defendants, is attached as Exhibit 14 and incorporated herein by reference.

121. Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '212 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 13 of the '212 Patent.

122. On information and belief, despite Defendants' knowledge of the '212 Patent and of their infringement of the '212 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '212 Patent.

123. On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 13 of the '212 Patent. For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials,

test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 13 of the '212 Patent.

124.    As a result of Defendants' infringement of the '212 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

125.    In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VI – INFRINGEMENT OF THE '829 PATENT

126.    Plaintiffs incorporate herein the allegations made in paragraphs 1 through 125.

127.    Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '829 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

128.    An exemplary claim chart demonstrating Defendants' infringement of the '829 Patent, as well as Defendants' customers' infringement of the '829 Patent, which has been induced by Defendants, is attached as Exhibit 15 and incorporated herein by reference.

129.    Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '829 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 1 of the '829 Patent.

130.    On information and belief, despite Defendants' knowledge of the '829 Patent and of their infringement of the '829 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '829 Patent.

131.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '829 Patent.  For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the '829 Patent.

132.    As a result of Defendants' infringement of the '829 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

133.    In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT VII – INFRINGEMENT OF THE '289 PATENT

134.    Plaintiffs incorporate herein the allegations made in paragraphs 1 through 133.

135.    Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '289 Patent, including, for example, claim 6, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

136.    An exemplary claim chart demonstrating Defendants' infringement of the '289 Patent, as well as Defendants' customers' infringement of the '289 Patent, which has been induced by Defendants, is attached as Exhibit 16 and incorporated herein by reference.

137.    Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '289 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 6 of the '289 Patent.

138.    On information and belief, despite Defendants' knowledge of the '289 Patent and of their infringement of the '289 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '289 Patent.

139.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 6 of the '289 Patent.  For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 6 of the '289 Patent.

140.    As a result of Defendants' infringement of the '289 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

141.    In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

ORIGINAL COMPLAINT

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and grant the following relief:

a. A judgment that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit either literally or under the doctrine of equivalents;

b. A judgment requiring Defendants to pay Plaintiffs damages under 35 U.S.C. § 284 for their past, present, and future infringement, as applicable, of each of the Patents-in-Suit, including an accounting for any sales or damages not presented at trial;

c. A judgment and order that Defendants have willfully infringed the Patents-in-Suit and requiring Defendants to pay Plaintiffs enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285;

d. A judgment that Defendants account for and pay to Plaintiffs a reasonable, ongoing, post-judgment royalty for any continuing infringing activities not already accounted for;

e. A permanent injunction enjoining Defendants and their officers, agents, representatives, assigns, licensees, distributors, employees, related entities, and all those acting in privity or in concert with Defendants from further infringement of the Patents-in-Suit;

f.  A judgment and order requiring Defendants to pay Plaintiffs prejudgment and post-judgment interest on the damages awarded;

g.  A judgment and order requiring Defendants to pay Plaintiffs' costs; and

h.  Such other and further relief as the Court may deem just and proper.

ORIGINAL COMPLAINT                                                    Page 30 of 31

Dated: June 12, 2026

Respectfully submitted,

*/s/ Timothy E. Grochocinski*
Timothy E. Grochocinski
Illinois Bar No. 6295055
tim@nelbum.com
C. Austin Ginnings
Illinois Bar No. 6343678
austin@nelbum.com
Taryn N. Trusty
Illinois Bar No. 6344409
taryn@nelbum.com
NELSON BUMGARDNER CONROY PC
745 McClintock Drive, Suite 340
Burr Ridge, Illinois 60527
708.675.1974 (telephone)

Brent Bumgardner
Texas Bar No. 00795272
brent@nelbum.com
NELSON BUMGARDNDER CONROY PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111 (telephone)


*Attorneys for Plaintiffs*
*Malikie Innovations Ltd. and*
*Key Patent Innovations Ltd.*